GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff-Appellee

v.

GARY GRAVES, Defendant-Appellant

No. 78-1538

United States Court of Appeals

Third Circuit

Argued December 14, 1978

Filed February 16, 1979

Barnard Van Sluytman, Esq. (Birch, de Jongh and Farrelly), Charlotte Amalie, St. Thomas, V.I., *for appellant*

Ishmael A. Meyers, Esq., United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge,* WEIS and GARTH, *Circuit Judges*

OPINION OF THE COURT

GARTH, *Circuit Judge*

This appeal requires us to construe a statute of the Virgin Islands[1] which proscribes the fraudulent use of credit cards. The proper interpretation of the statute was not one of the issues raised or briefed on appeal. However, at our request counsel discussed this issue with us at oral argument. Just as we are satisfied that the contentions raised by the appellant Graves in his brief on appeal have no merit, we are equally satisfied that his sentence which was imposed for violations of 14 V.I.C. § 3004 was not authorized and must be vacated.

I

Gary Graves was arrested on June 22, 1976. A six-count information was filed against him. Four of the six counts were dismissed on the government's motion after Graves had pled guilty to Counts III and IV. Counts III and IV charged violations of 14 V.I.C. § 3004 in that Graves, on June 22, 1976, had fraudulently used a Master-charge Card issued to one "Muffy Kamara" to obtain services from The New Windward Hotel and Hertz Rent-A-Car.

Graves was sentenced to jail on July 30, 1976, for a term of one year under Count III and for a term of one

---

[1] 14 V.I.C. § 3004.

year under Count IV. However, the judgment provided that he was to serve only six months with respect to Count III and only two months with respect to Count IV, both sentences to be served consecutively, with the balance of each sentence to be suspended. In addition, Graves was placed on unsupervised probation for one year. In effect, therefore, Graves was required to serve eight months of the combined 24-month sentence, with 16 months suspended, and thereafter was to serve 12 months on unsupervised probation.[2]

The problems presented on this appeal were compounded in large part by Graves' initial self-representation and by a sparse and incomplete record. As best we can glean from the sentencing transcript and from Graves' numerous applications and letters to the district court, it appears that prior to Graves' sentencing on the credit card charges brought in the Virgin Islands, he had been charged in the Eastern District of New York with an apparently unrelated crime of mail theft. According to a letter written by Graves to the district court judge in the Virgin Islands, the mail theft charge had resulted in a federal detainer having been lodged against Graves at some time prior to his Virgin Islands sentencing. Graves asserted in that letter that on August 30, 1976 he was transferred to the Eastern District of New York where on January 7, 1977 he was sentenced to two years imprisonment on the mail theft charge. That sentence was imposed to run consecutively to the Virgin Islands sentence with which we are here concerned.

---

[2] The judgment of sentence entered by the district court incorrectly stated that Counts III and IV to which Graves pled guilty charged him with fraudulent *use* of a credit card (Count III) and *obtaining* a credit card by fraudulent means (Count IV). In fact, both counts of the information charged only fraudulent *use* and the record clearly reveals that Graves pled guilty only to fraudulent use of a credit card. The incorrect characterization as set forth in the judgment of sentence, however, had no bearing on Graves' sentence nor does it have any bearing on our disposition.

It is impossible to tell from the record where Graves was incarcerated at the time each of his two Rule 35 motions[3] was filed. In fact, Graves' present whereabouts are not even known to his appointed counsel let alone to the United States Attorney for the Virgin Islands. To this extent, therefore, we are not clear as to what time Graves has served on each of his two sentences. Hence, we cannot with any accuracy determine the effect of the district court's ruling on Graves' Virgin Islands incarceration or on his probationary term. Suffice it to say that on September 12, 1977 the district court judge in the Virgin Islands denied Graves' motion to correct his Virgin Islands sentence, expressing the view that there was no illegality in the sentence. Graves appealed from the September 12, 1977 order denying his motion. Thereafter, counsel was appointed to assist him in prosecuting his appeal.[4]

## II

■ Graves' counsel claimed in his brief on appeal that Graves had been:

"denied his Sixth Amendment Rights and, thus, due process of law and . . . error was committed by accepting defendant's guilty plea and depriving defendant of a hearing on motion to correct his sentence.

I) By discounting defendant's understanding of the plea bargain.

---

[3] Fed. R. Crim. P. 35 provides that "the court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein [120 days after sentence or judgment of appeal] for reduction of sentence."

[4] On October 14, 1977 Graves filed a third motion pursuant to 28 U.S.C. § 2255. In this motion he alleged that he had pled guilty to two counts of the information, but that the judgment entered was at variance with his plea; that the court was not informed of the factual basis for his plea bargain with the United States Attorney (i.e., cooperation with the postal inspectors), and as a result the Court did not honor the "concurrent time" agreement which Graves alleges; and that his counsel was incompetent in advising him to waive a presentence report. The disposition of this motion is not before this court.

108

II) By accepting defendant's guilty plea in light of the varying representations as to the plea bargain.

III) By depriving defendant of a hearing on his post-sentence motion to correct the sentence in light of his allegations by motion."

Brief of Appellant at 1.[5] If we were to confine ourselves to the arguments so raised, we would have no alternative but to affirm the district court's order of September 12, 1977. As we have noted, n.3 supra, Fed. R. Crim. P. 35 does not authorize a district court to correct a sentence imposed in an illegal manner unless a motion seeking that relief is brought within 120 days after sentence was imposed. Indeed, the district court has no jurisdiction to grant relief where the 120-day time period has expired. United States v. Dansker, 581 F.2d 69 (3d Cir. 1978); United States v. Buechler, 557 F.2d 1002 (3d Cir. 1977); United States v. Robinson, 457 F.2d 1319 (3d Cir. 1972). Here, Graves had taken no appeal from his sentence imposed July 30, 1976. Hence, his Rule 35 motions which were filed on January 25 and July 8, 1977, respectively, were filed far in excess of the Rule 35 limitation of 120 days. Accordingly, the three grounds raised in Graves' brief on appeal are barred by this provision of Rule 35.[6]

■ On the other hand, Rule 35 does permit the correction of an illegal sentence (as contrasted with a sentence imposed in an illegal manner) at any time, and as we con-

---

[5] The argument made in Graves' brief under Point III was as follows:

"Although defendant motioned the District Court on the basis of an illegal sentence, it was obvious also that he sought to set aside his guilty plea and sentence for alleged misrepresentations by appointed counsel and the United States Attorney. As such the District Court could have well considered defendant's motion as raising a Rule 32(d) motion to withdraw his guilty plea. The District Court denied defendant's post-sentence motion as being moot since defendant had completed serving his sentence."

[6] The legality of Graves' sentence itself was not challenged on appeal. The argument advanced by Graves' counsel, which was consistent with the issues briefed, was that the district court should have construed the Rule 35 motion from which appeal was taken as one brought under Fed. R. Crim. P. 32(d) for withdrawal of guilty plea and for vacation of judgment due to manifest injustice. However, nothing appears in Graves' moving papers which even remotely suggests that he sought to withdraw his guilty plea or that the district court should have considered his motion in that light.

strue 14 V.I.C. § 3004 it appears to us that the district court may well have imposed a sentence upon Graves which exceeded permissible limits. Accordingly, regarding that issue as the only viable issue on this appeal, prior to argument we wrote to counsel and asked for their views as to the correct interpretation of 14 V.I.C. § 3004. We therefore turn to a consideration of 14 V.I.C. § 3004 in order to determine whether the provisions of that statute were properly applied to Graves.

## III

As stated above, Graves had pled guilty to Counts III and IV charging him with violating 14 V.I.C. § 3004.[7] Neither count by its terms specified the precise sum of money or services which Graves was charged with having obtained by credit card fraud. All that can be ascertained from the criminal information to which Graves pled is that in each instance the services did not exceed $100. Of greater importance, the record is completely devoid of any proofs which would establish the exact value of the services which Graves obtained from Hertz and from The New Windward Hotel in violation of § 3004. The government contended in its brief that Graves had committed two violations of 14 V.I.C. § 3004, each of which was charged in a

---

[7] That section provides as follows:

§ 3004. Fraudulent use of credit card

A person who, with intent to defraud the issuer or a person or organization providing money, goods, services or anything else of value or any other person, uses, for the purpose of obtaining money, goods, services or anything else of value, a credit card obtained or retained in violation of this law or a credit card which he knows is forged, expired or revoked or who obtains money, goods, services or anything else of value by representing, without the consent of the cardholder, that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, violates this subsection and is subject to the penalties set forth in subsection (a) of section 3010 of this chapter, if the value of all moneys, goods, services and other things of value obtained in violation of this subsection does not exceed one hundred ($100) dollars in any six (6) month period. The violator is subject to the penalties set forth in subsection (b) of section 3010 of this chapter, if such value does exceed one hundred ($100) dollars in any six (6) month period. . . .

separate count; that the government was therefore required to prove two separate credit card uses; that each count clearly required proof of elements that the other count did not; and that the conviction for separate offenses was accordingly appropriate.

To that extent, we do not question the government's analysis. Unfortunately, however, from the government's standpoint in this case, its analysis does not go far enough, for it ignores the plain meaning of a term of the statute which measures the total services obtained by fraud within a six-month period. The terms of the statute relevant here provide that:

"[a] person who, with intent to defraud . . . a[n] . . . organization providing . . . services . . . obtains . . . services . . . by representing . . . that he is the holder of a specified card . . . violates this subsection and is subject to the penalties set forth in subsection (a) of section 3010 of this chapter, if the value of *all* . . . services . . . *obtained* . . . does not exceed one hundred dollars ($100) dollars in any six (6) month period. The violator is subject to the penalties set forth in subsection (b) of section 3010 of this chapter, if such value does exceed one hundred ($100) dollars in any six (6) month period."

14 V.I.C. § 3004 (emphasis added).

The penalties to which 14 V.I.C. § 3004 refers, are set out in 14 V.I.C. § 3010.[8] Under that section of § 3004 violator, who has not obtained services by credit card fraud of more than $100 in a six-month period, is subject to a maximum fine of $1,000 or imprisonment for one year or both. However, if the amount of services obtained by fraud exceeds $100 in a six-month period, then the violation of

---

[8] 14 V.I.C. § 3010 "Penalties" provides:
    (a) A person who is subject to the penalties of this subsection shall be fined not more than one thousand ($1,000) dollars or imprisoned not more than one (1) year or both.
    (b) A person who is subject to the penalties of this subsection shall be fined not more than three thousand ($3,000) dollars or imprisoned not more than three (3) years or both.

§ 3004 which has been committed subjects the violator to a sentence of up to $3,000 or three years in jail, or both.

Unfortunately, we do not have the benefit of any legislative history or expression to aid us in construing the meaning and application of § 3004. Even though the language of the statute is plain and appears to be straight-forward, it soon becomes apparent that when its provisions are applied to particular factual situations, additional analysis is required so as to give proper effect to its provisions.[9]

■■ We are instructed that "the starting point in every case involving construction of a statute is the language itself." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 197 (1976). Heeding this reminder, it is at least evident from the language of § 3004 that prior to the imposition of sentence by the district court for a violation of that statute, there must appear in the record proof of the value of "all ... services ... obtained ... in any six (6) month period" in order to permit the district court judge to ascertain whether the defendant is subject to the penalties of subsection (a) or (b) of 14 V.I.C. § 3010. It is also evident to us that the "six months" provisions of § 3004 do not describe an element of the substantive offense proscribed, but rather are concerned only with establishing limitations on sentencing.[10] 14 V.I.C. § 3004 precludes the imposition of the greater penalty set out in 14 V.I.C. § 3010(b) whenever the total value of all fraudulent credit card use in any six-month period (from the date of the first violation proved) does not exceed $100. To effectuate the statute's purpose in differentiating between the lesser and greater penalties prescribed, the proofs must focus on the total sum of all

---

[9] At oral argument the government agreed that it is appropriate to construe § 3004 as we have construed it in this opinion.

[10] An analogous situation may be found in United States v. Corson, 449 F.2d 544 (3d Cir. 1971) (en banc) where we have required a general sentence for different counts under the bank robbery statute. See also United States v. Gomez, Slip Op. (3d Cir., February 2, 1979) (en banc).

goods, services or money fraudulently obtained within the relevant six-month period rather than on the number of separate transactions in which the defendant has engaged. Thus, an essential element in the government's proof of a violation of § 3004 must be the total sum of all services obtained by credit card fraud in the six-month period.[11]

■■ Moreover, regardless of the number of violations charged, the total *sentence* which may be imposed for violations totalling less than $100 within the relevant six-month period (measured from the date of the first violation proved) may not exceed one year imprisonment or $1,000 fine or both. 14 V.I.C. § 3010(a). Thus, although individual sentences may be imposed for each violation proved, the total sentence, where the aggregate violations are less than $100, may not exceed the penalties prescribed by § 3010(a). If the penalty imposed for the initial violation is the statutory maximum (i.e., $1,000 and one year in prison), no additional penalties may be imposed for convictions of subsequent violations which may have occurred in the relevant six-month period. If, on the other hand, the penalty imposed for the first violation is less than the maximum, additional penalties may be imposed for each subsequent violation during the relevant six-month period until, in total, the maximum penalty is reached.[12]

---

[11] Obviously, nothing in our construction of § 3004 precludes the government from prosecuting each separate violation of § 3004 and obtaining multiple convictions based on proof of each separate use. The government may file separate informations charging each fraudulent use or, as was the case here, may file one information charging each separate violation in separate counts. As indicated, the provisions of § 3004 only limit the sentence which may be imposed, not the number of convictions which may be obtained.

[12] By the same token, a defendant convicted of multiple violations of § 3004 where the total value is more than $100 during a six-month period (commencing with the first violation proved) may not be sentenced to a total penalty which exceeds the limits of 14 V.I.C. § 3010(b). Thus, the district court may impose a sentence or fine for each violation proved, but may not impose a sentence totalling more than 3 years in prison and $3,000 in fines when all the convictions are based on violations occurring in the relevant six-month period.

If we were to interpret § 3004 otherwise, there would be no meaning left to that statute's six-month limitation, as each successive violation within the six-month period might then give rise to a separate sentence of one year in jail and a $1,000 fine. Conceivably, under such an interpretation, it would be possible for five $10 violations of § 3004 which were committed within six months to result in a sentence of five years and a $5,000 fine. Such a result, however, is negated by the very terms of § 3004.

Applying this analysis to the instant case, it is readily apparent that although Graves was charged with defrauding both The New Windward Hotel and Hertz, the record reveals no evidence that the total amount of services obtained by Graves' fraudulent credit card use exceeded $100 within a six-month period. We know by the information itself and by Graves' plea that both transactions took place on the very same day, June 22, 1976. There are no other proofs indicating other credit card uses by Graves which come within the purview of § 3004 and which occurred during the balance of that six-month period.

■ Although proof of all value is absent in this case, Graves' guilty plea need not be vacated for the counts to which Graves pled guilty alleged that Graves had obtained services of *some* value. United States v. Lancer, 508 F.2d 719, 725 (3d Cir. 1975) (en banc), cert. denied, 421 U.S. 989 (1975). Lancer involved a statute, 18 U.S.C. § 641, analytically identical to the one at issue here. That statute prohibits embezzlement or theft of public money, property or records and imposes two levels of penalties depending upon the value of the property converted. If the value is proved to be under $100, the penalty is limited to a fine not in excess of $1000, a prison term not in excess of one year, or both. If the value of the property converted exceeds $100, the penalty is substantially greater. In Lancer, as is the case here, the indictment alleged no specific value

for the 364 stolen blank postal money orders and no proof of value was established at the time Lancer entered his guilty plea. We there held that in the absence of proof of value only the lesser penalty could be imposed.

■ Here the district court sentenced Graves to a total of two years: one year imprisonment on each of Counts III and IV. This excessive sentence was imposed even though the maximum sentence to which Graves could be subject under § 3004 and § 3010(a) was a jail term of one year. Hence, even though 16 months of that sentence was suspended, the sentence so decreed was illegal, as it exceeded the maximum sentence permitted by statute.

■ Because the two counts to which Graves pled guilty cannot, on this record, support a sentence of more than one year, we are obliged to vacate Graves' sentence as to both counts and remand for resentencing.[13]

## III

We will vacate the sentence imposed upon Graves under Counts III and IV and direct that Graves be resentenced[14] on both counts in a manner not inconsistent with this opinion.

---

[13] As we have previously noted, Graves whereabouts being unknown, we are uncertain as to his present prison and probation status, particularly as it may affect his Virgin Islands sentence. If for no other reason, this alone would prevent us from considering any suggestion that the sentencing issue is moot.

[14] We naturally assume the district court will comply with all other relevant requirements pertinent to resentencing. See Ex Parte Lange, 85 U.S. 163 (1874); United States v. Gomez, supra.

We note that Graves' presence at reduction of sentence proceedings is not required by Fed. R. Crim. P. 43(c)(4).