Charles WALKER, Appellant,

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.

D.C. Civ. App. No. 1998–196.

District Court, Virgin Islands,
St. Thomas Division,
Appellate Division.

Decided Dec. 20, 2000.

Gary M. Alizzeo, St. Thomas, U.S.V.I., for appellant.

Maureen Phelan Cormier, Assistant U.S. Attorney, St. Thomas, U.S.V.I., for appellee.

Before RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and ALPHONSO G. ANDREWS, Jr., Territorial Court Judge, Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Appellant Charles Walker appeals his 23-year sentence arising out of the purchase of a watch and bracelet using three counterfeit credit cards. We vacate his conviction and sentence on all five counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 1996, Charles Walker ["Walker" or "appellant"], a 55-year-old nonresident of the Virgin Islands with no prior convictions, arrived in St. Thomas on board a flight from Atlanta. After checking into a hotel, he and another man, Earl Gunn ["Gunn"], went first to the Little Switzerland Parkside Store, where they purchased a Rolex Presidential watch for $13,594.50, and then to the Cardow Main Street Store, where they purchased a diamond tennis bracelet for $3,295. They used two credit cards to purchase the Rolex watch, explaining to the salesperson that the purchase price exceeded the limit of each card but not the combined limit of both cards together, and they used a third card to purchase the bracelet.

The next day, as Walker attempted to board a flight back to Atlanta, a U.S. Customs official, performing a routine customs search of appellant's carry-on bag, found nine credit cards, several of which were embossed with names other than the appellant's name. A special agent of the Virgin Islands Attorney General's Office, who was already in the airport looking for Walker in connection with the credit card purchases, was called to the scene where he arrested Walker. Codefendant Gunn was also arrested. The special agent confirmed with MasterCard that the credit card numbers were not assigned to Walker, and that the cards themselves, including the ones used to purchase the watch and bracelet, were counterfeits.

The government charged Walker with three counts of credit card fraud based on the three different credit cards used and two counts of possession of stolen property based on the two items purchased. (App. I at 20–21 (second amended information).) Territorial Court Judge Ive A. Swan set Walker's bail at $400,000, stating he would "reconsider defendant's bail if he gets some reassurances from the defendant." (App. I at 24 (Record of Proceedings, Dec. 10, 1996).) In December, 1996, Walker moved for release upon $10,000 bail, but because the docket number of his case had been changed, he was required to refile the motion, which he did several weeks later. (App. I at 27, 33 (motions for release).) He made an oral motion for a ten percent bail reduction on August 26, 1997. (App. I at 4 (docket entry, Aug. 26, 1997).) The judge never ruled on these motions. (*See id.* at 1–14.)

On October 9, 1997, codefendant Gunn pleaded guilty to one felony count of credit card fraud under 14 V.I.C. § 3004. With Walker looking on, the Judge informed Gunn that he was "facing 30 something years." (App. I at 129 (Tr. Change of Plea Hearing, Oct. 9.1997).) Gunn was sen-

tenced to time served of eleven months and fined $1,500. (*Id.* at 140–42.) Judge Swan told Gunn, with Walker still present, that he was "lucky" to have pleaded guilty, because, "had you gone to trial on this, no way you were going to get this kind of sentence." (*Id.* at 142.)

On May 11, 1998, after eighteen months in jail, Walker was tried before a jury. He admitted committing the charged acts, but claimed he acted under duress. (App. II at 368–84 (Tr. Trial Vol. 2).) The next day, at the close of the evidence, despite defense counsel's objections, the court refused to include the element of intent to defraud in the crime of fraudulent use of a credit card under 14 V.I.C. § 3004. (*See id.* at 408–14.) The jury found Walker guilty of the three counts of credit card fraud and the two counts of possession of stolen property.

At sentencing, Judge Swan opined about Walker's duress defense that "the story that he told was so ridiculous and outrageous, that it just infuriate[d] the jurors," and that it "is what you would say when you think people are dumb and stupid." (App. II at 492 (Tr. Sentencing, June 24, 1998).) Judge Swan continued: "it's one thing that [jurors] don't like is a smart aleck, someone trying to take them to the washers. He tells an incredible story.... It's the kind of thing that you would only see on TV." (*Id.* at 495.) Judge Swan noted that Walker had been offered a "sweety deedie plea," but didn't accept it. (*Id.* at 507.) He also condemned Walker for refusing to say what he had done with the watch, in effect insisting that he was "going to keep the booty." (*Id.* at 520.)

The presentence report recommended that Walker receive a three-year prison term. The government asked for at least five years. Judge Swan, however, sentenced Walker to twenty-three years in prison—the maximum of two consecutive ten-year terms for each of Counts III and V plus three concurrent three-year terms for Counts I, II, and IV—and a $13,000 fine. (*See id.* at 521–22.) The judge indicated the deterrent purpose of the sentence, pronouncing: "That's the word. Let it go out. Twenty-three years and the $13,000 fine." (*Id.*)

This appeal followed.

## II. DISCUSSION

We have jurisdiction over this appeal pursuant to 4 V.I.C. § 33.[1] This Court exercises plenary review of constitutional claims and claims involving statutory construction. *See Parrott v. Government of the Virgin Islands,* 56 F.Supp.2d 593, 594 (D.V.I.App.Div.1999) (statutory construction); *Nibbs v. Roberts,* 31 V.I. 196, 204 (D.V.I.App.Div.1995) (constitutional claims).

Walker argues that (1) the Territorial Court violated his Fifth Amendment Due Process Right and abused its discretion when, as punishment for asserting his right to a trial, the court sentenced him to twenty-three years for a first-time, nonviolent offense; (2) the court erred by refusing to include intent to defraud as an element of fraudulent use of a credit card under 14 V.I.C. § 3004 (government confesses error on this issue); (3) Counts I and II alleging credit card fraud connected with the purchase of a single watch using two credit cards violated the Double Jeopardy Clause (government confesses error on this issue); (4) the court violated the maximum penalty provision of 14 V.I.C. § 3010(b) by sentencing defendant to three separate (although concurrent) three-year terms for Counts I, II, and IV (government confesses error on this issue); (5) Counts III and V violated the Double Jeopardy Clause and the statutory intent of the Credit Card Crime Act and 15 V.I.C. § 104; and (6) the Territorial Court

---

1. See V.I. CODE ANN. tit. 4, § 33 (1997 & Supp. 2000); Section 23A of the Revised Organic Act of 1954.

erred by placing the burden of proving duress on appellant.[2]

We will vacate Walker's sentence, because the trial record indicates that the unusually harsh sentence was in part a response to Walker's assertion of his due process right to a trial. Further, as noted, the government has confessed error on appellant's arguments (2), (3), and (4). We accept the government's confession of error and will vacate Walker's convictions on Counts I, II, and IV for credit card fraud. We will also vacate Walker's convictions on Counts III and V, because 14 V.I.C. § 3014 precluded the government from prosecuting Walker under 14 V.I.C. § 2101(a), a provision inconsistent with 14 V.I.C. §§ 3004 and 3010.

## A. The Harsh Sentence Imposed Violated Appellant's Due Process Rights under the Fifth Amendment.

■ Appellant argues that he was "punished" by the Territorial Court for asserting his Fifth Amendment due process right to a trial.[3] The government counters that trial courts have virtually unfettered discretion in imposing a sentence within statutory guidelines and such sentences may not be disturbed on appeal. *See*

United States v. Rosenberg, 806 F.2d 1169 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987). While we accept the government's statement of the rule, like every rule, this one too is not without exception.

■ "[T]he sentencing process is not wholly immune from judicial review. The punishment must fit the convict as well as the crime." *See Karpouzis v. Government of the Virgin Islands,* 58 F.Supp.2d 635, 639 (D.V.I.App.Div.1999 [*"Karpouzis II"*]) (citing *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). In exercising its supervisory function, an appellate court may vacate a sentence imposed by a trial court, even though the sentence falls within the statutory maximum. *See United States v. Goot,* 894 F.2d 231, 237–38 (7th Cir.1990) (correcting disparity between sentences given codefendants); *United States v. Carter,* 804 F.2d 508, 513–14 (9th Cir.1986) (examining whether trial court improperly imposed harsher sentences as punishment for exercise of right to stand trial); *United States v. Rogers,* 504 F.2d 1079, 1084–85 (5th Cir.1974), *cert. denied,* 422 U.S. 1042, 95

2. Also before this Court is appellant's motion for bail pending appeal. It would appear that the eighteen-month detention of appellant on $400,000 bail for a nonviolent crime violated Virgin Islands law governing pretrial detention of nonviolent criminals. Title 5, section 3504a of the Virgin Islands Code limits pretrial detention to an offender charged with a dangerous crimes or one who, "for the purpose of obstructing or attempting to obstruct justice, threatens, injures or intimidates or attempts to threaten, injure or intimidate any prospective witness or juror." *See* 4 V.I.C. § 3504a. Pretrial detention of appellant also violated Territorial Court Rule 141, which instructs that all but serious felony offenders "shall, before conviction, be bailable." Terr. Ct.R. 141(a). As we noted in *Karpouzis v. Government of the Virgin Islands,* 961 F.Supp. 841, 849–50 (D.V.I.A.D.1997) [*"Karpouzis I"*], "[i]n the Virgin Islands, Terr.Ct.R. 141(a), together with the applicable provisions of the [Bail Reform Act, 18 U.S.C. §§ 3141–3150], including section 3142(c)(2)'s

requirement that a financial condition not be used as a means of detention, mandate that the trial judge order the release of a nondangerous defendant, subject to the least restrictive combination of conditions, including money bail, which will reasonably assure the defendant's attendance at trial." We note that even persons charged with serious violent offenses, including murder, which are detainable offenses, have been admitted recently to lower bail of $350,000. In light of our decision vacating all the convictions and ordering Walker's immediate release, however, we need not decide the bail motion.

3. The Fifth Amendment of the Constitution is made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1994), *reprinted in* V.I.Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 73–177 (1995 & Supp.2000) (preceding V.I.Code Ann. tit. 1).

S.Ct. 2655, 45 L.Ed.2d 693 (1975) (exercising "supervisorial powers" to vacate sentence within statutory limits);[4] *United States v. Stockwell,* 472 F.2d 1186, 1187–88 (9th Cir.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973) (remanding for resentencing where court threatened higher sentence for standing trial); *Thomas v. United States,* 368 F.2d 941, 944–45 (5th Cir.1966) (exercising supervisory power and vacating "harsher sentence ... imposed only because [defendant] had pleaded not guilty and stood trial....").

The government's propounded rule of "virtually unfettered discretion" relies on the presumption that no procedural defects affected the fairness of the sentence imposed. *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) ("The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process."); *Rosenberg,* 806 F.2d at 1173 ("It is well settled that absent *procedural defects,* an appellate court will not disturb the district court's sentence if it falls within the statutory limits.") (emphasis added). Here, we find that the Territorial Court's sentencing of Walker lacked "the essential fairness of the procedure by which a judge shall exercise discretion in fixing punishment within permissible limits." *See Karpouzis II* at 638 (citing *United States* ex rel. *Collins v. Claudy,* 204 F.2d 624, 628 (3d Cir.1953)). The record demonstrates that Judge Swan employed a carrot and stick approach to encourage Walker to plea, and when instead Walker

asserted his right to a trial, the judge followed through on his promise to use the stick by sentencing Walker to the absolute statutory maximum of twenty-three years in prison, whereas he had sentenced his codefendant who had pleaded guilty to time served of only eleven months.

At the October 1997 plea hearing for codefendant Gunn, Judge Swan, in the presence of Walker, alluded to the higher sentence lurking behind any demand for a jury trial. He told Mr. Gunn's lawyer, "[a]sk him if he wants to take a chance with the big 12 [jurors] and go for broke for everything." (App. I at 129 (Tr. Change of Plea Hearing, Oct. 9, 1997).) "He's facing 30 something years," implying that a maximum sentence was awaiting anyone who asserted his right to a trial. (*Id.*) After Gunn pleaded guilty, the trial court explained how "lucky" Gunn was to have done so. (*See id.* at 142.) In sentencing Gunn to eleven months in prison and a fine, Judge Swan told him, "had you gone to trial on this, no way you were going to get this kind of sentence." (*Id.*) This implicit threat to Walker, who was present at the hearing, was almost identical to the sentencing judge's threat in *Stockwell,* where the Court of Appeals for the Ninth Circuit wrote:

> Before trial, the district judge told the defendant that if he were to plead guilty to one count he would receive a three-year sentence, as did a codefendant who pled guilty. The court added that if the defendant chose to stand trial and was convicted he would receive a sentence of from five to seven years. The defendant elected to stand trial. He was convicted

4. The court in *Rogers* explained:

We, of course, cannot modify the sentence, but if indeed [appellant] "paid a judicially imposed penalty for exercising his constitutionally guaranteed rights," we are called upon to exercise our supervisory powers. As we recently explained ...:

Appellate modification of a statutorily-authorized sentence ... is an entirely different matter than the careful scrutiny of the judicial process by which the particular punishment was determined. Rather than an un-

justified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases.

When it has been made to appear that longer sentences have been imposed by the courts because the defendants refused to confess their guilt and persisted in their claims of innocence we have vacated the sentences.

*Id.* (citations omitted).

and given concurrent sentences of seven years for the five counts of which he was guilty. The total sentence could have been as much as fifteen years on one of the counts, with consecutive sentences on the others. There is no question but that the sentence was well within the statutory range of penalties, and ordinarily it would not be subject to review in this court.

Here, however, the defendant contends he was punished with four additional years in prison for taking the court's time with a trial. While we do not believe that the experienced trial judge actually punished the defendant for standing trial, the record leaves unrebutted the inference drawn by the defendant.

If there was such a use of the sentencing power, the constitutional right to trial would be impaired. The chilling effect of such a practice upon standing trial would be as real as the chilling effect upon taking an appeal that arises when a defendant appeals, is reconvicted on remand, and receives a greater punishment.

472 F.2d at 1187–88 (citations and footnotes omitted); *see also Rogers,* 504 F.2d at 1084–85 ("When it has been made to appear that longer sentences have been imposed by the courts because the defendants refused to confess their guilt and persisted in their claims of innocence we have vacated the sentences.").

■ At Walker's sentencing, Judge Swan implied that a plea would have been accepted from only one of the two defendants, whoever came forward first:

So, I am going to do my sentencing now. And remember, you and Mr. Gunn had the same deal, and Mr. Gunn—and I stayed true to my word. I said whoever is the first that come in, they get it. And after days, none of you came in, and Mr. Gunn came in and he paid his fine and he was gone with the wind, because I live up to my word.

(App. II at 521 (Tr. Sentencing Hearing, June 24, 1998).) Such deal-making is a prosecutorial function properly left to the executive branch. Even the appearance of siding with the government to dissuade a defendant from asserting his constitutional right to a trial is prohibited. *See Stockwell,* 472 F.2d at 1187–88 ("[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice."). Further, it is the legitimate role of the prosecutor, not the courts, to negotiate more lenient treatment through a plea bargain. As the court noted in *Carter:*

Mere imposition of a heavier sentence, without more, does not invalidate it. Plea bargaining is an approved method of encouraging guilty pleas by offering a defendant "the certainty of a lesser punishment or the possibility of a more severe punishment."

. . . .

When the court is involved in plea bargaining and a harsher sentence follows the breakdown in negotiations, "the record must show that no improper weight was given the failure to plead guilty."

804 F.2d at 513–14 (citations omitted).

The extreme disparity of sentences imposed on Walker and Gunn, the harshness of Walker's sentence for a first-time, nonviolent offense, the judge's implicit threats and coercive involvement in plea negotiations, as confirmed at Walker's sentencing, all raise the strong inference that Judge Swan gave undue consideration to Walker's refusal to plead guilty, and that his insistence on a jury trial impermissibly influenced Judge Swan's imposition of the maximum sentence of twenty-three years. Such abuse of discretion, regardless of what other, legitimate factors the judge may have considered in sentencing Walker, was constitutional error. Were this the sole issue before us, we would merely remand for resentencing. *See, e.g., Goot,* 894 F.2d at 237–38 (correcting disparity

between sentences given codefendants); *Stockwell*, 472 F.2d at 1187–88 ("[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice" and remanding for resentencing). We next address the validity of his convictions themselves.

## B. Counts Three and Five Are Void and Must Be Vacated because the Government Cannot Charge Appellant for Credit Card Fraud under Section 2101 (Possessing Stolen Property).

■ Walker argues that the Credit Card Crime Act ["CCCA"], Act of Feb. 28, 1972, No. 3171, Sess.L.1972, p. 26 (codified as 14 V.I.C. §§ 3001–3016), specifically 14 V.I.C. § 3014, precluded the government from charging him for receipt or possession of stolen property under 14 V.I.C. § 2101. The long accepted rule, asserted by the government, that a prosecutor may choose under which of two statutes to prosecute, also is not without exception. The most obvious exception exists "where [the Legislature] clearly intended that one statute supplant another." *See United States v. Sherman*, 150 F.3d 306, 318 (3d Cir.1998); *see also United States v. Curran*, 20 F.3d 560, 565 (3d Cir.1994). Legislative intent in this regard must be manifest in the plain language of the statute or in a "positive repugnancy" between the provisions. *See United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

The gravamen of Walker's argument is that the Virgin Islands Legislature in-

tended to make the CCCA the exclusive basis for charging credit card crimes in the Virgin Islands.[5] He relies on the plain language of 14 V.I.C. § 3014, which bars application of any provision which is inconsistent with the CCCA:

> This chapter [sections 3001–16] shall not be construed to preclude the applicability of any other provision of the criminal law of the Virgin Islands which presently applies or may in the future apply to any transaction which violates this chapter, *unless such provision is inconsistent with the terms of this chapter.*

14 V.I.C. § 3014 (emphasis added). He argues, and we agree, that 14 V.I.C. §§ 3004 and 3010 (CCCA charging and penalty provisions, respectively) are inconsistent with 14 V.I.C. § 2101 (possession of stolen property).

Title 14, section 3004 of the Virgin Islands Code reads in relevant part:

> A person who, with intent to defraud the issuer or a person or organization providing money, goods, services or anything else of value or any other person, ... or who obtains [such things] of value by representing, without the consent of the cardholder, that he is the holder of a specified card ..., violates this subsection.... The violator is subject to the [felony] penalties set forth in subsection (b) of section 3010 of this chapter, if [the total value of such things] exceed[s] one hundred ($100) dollars *in any six (6) month period....*

14 V.I.C. § 3004 (emphasis added).[6] It defines the offense and incorporates the

---

**5.** Walker also argues that his conviction and consecutive two ten-year sentences under section 2101(a) and three-year sentence under section 3004 violated the Double Jeopardy Clause of the Constitution, made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73–177 (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1). Since we reverse on other grounds, we need not reach this issue.

We do note, however, that punishing Walker consecutively for convictions of §§ 2101(a) and 3004 would seem to violate Virgin Islands law that "[a]n act or omission which is made punishable in different ways by different provisions of [the Virgin Islands Code] may be punished under any of such provisions, *but in no case may it be punished under more than one.*" 14 V.I.C. § 104 (emphasis added).

**6.** Title 14, section 3004 of the Virgin Islands Code reads in its entirety:

felony penalties provided in subsection (b) of section 3010:

> A person who is subject to the penalties of this subsection shall be fined not more than three thousand ($3,000) dollars or imprisoned not more than three (3) years or both.

14 V.I.C. § 3010(b).[7] Walker asks us to find these provisions, sections 3004 and 3010, inconsistent with 14 V.I.C. § 2101(a) and its incorporated felony penalties for possession of stolen property, of which he was convicted in Counts III and V. Title 14, section 2101(a) reads in pertinent part:

> Any person who buys, *receives or possesses any property which has been obtained in any unlawful manner, knowing* or having cause to believe *the property to have been so unlawfully obtained,* ... shall—
>
> (a) if the property received, bought or possessed shall be of the value of one hundred dollars or upward, be imprisoned for not more than 10 years or be fined not more than $5,000, or both....

14 V.I.C. § 2101 (emphasis added).[8] If we find a "positive repugnancy" between sections 3004 and 3010 and section 2101(a), then section 3014 would bar his prosecution and punishment under section 2101 for receiving or possessing property unlawfully obtained through credit card fraud.

In enacting the CCCA, the Legislature both expanded and narrowed the total penalty available for credit card crimes from that available under section 2101. On the

---

7. Title 14, section 3010 of the Virgin Islands Code reads in its entirety:

   > (a) A person who is subject to the penalties of this subsection shall be fined not more than one thousand ($1,000) dollars or imprisoned not more than one (1) year or both.
   >
   > (b) A person who is subject to the penalties of this subsection shall be fined not more than three thousand ($3,000) dollars or imprisoned not more than three (3) years or both.

8. Title 14, section 2101 of the Virgin Islands Code reads in its entirety:

   > Any person who buys, receives or possesses any property which has been obtained in any unlawful manner, knowing or having cause to believe the property to have been so unlawfully obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing or having cause to believe the property to be so stolen or illegally obtained shall—
   >
   > (a) if the property received, bought or possessed shall be of the value of one hundred dollars or upward, be imprisoned for not more than 10 years or be fined not more than $5,000, or both; or
   >
   > (b) if the property received, bought, or possessed shall be of a value of less than one hundred dollars, be fined not more than $1,000 or imprisoned not more than one year, or both.

A person who, with intent to defraud the issuer or a person or organization providing money, goods, services or anything else of value or any other person, uses, for the purpose of obtaining money, goods, services or anything else of value, a credit card obtained or retained in violation of this law or a credit card which he knows is forged, expired or revoked or who obtains money, goods, services or anything else of value by representing, without the consent of the cardholder, that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, violates this subsection and is subject to the penalties set forth in subsection (a) of section 3010 of this chapter, if the value of all moneys, goods, services and other things of value obtained in violation of this subsection does not exceed one hundred ($100) dollars in any six (6) month period. The violator is subject to the penalties set forth in subsection (b) of section 3010 of this chapter, if such value does exceed one hundred ($100) dollars in any six (6) month period. Knowledge of revocation shall be presumed to have been received by a cardholder four (4) days after it has been mailed to him at the address set forth on the credit card or at his last known address by registered or certified mail, return receipt requested, and, if the address is more than five hundred (500) miles from the place of mailing, by air mail. If the address is located outside the United States, Puerto Rico, the Virgin Islands, the Canal Zone or Canada, notice shall be presumed to have been received ten (10) days after mailing by registered or certified mail.

one hand, individual acts within a six-month period involving values of $100 or less each are aggregated into a single felony if their sum value exceeds $100, thereby expanding the available penalty. On the other hand, several acts within a six-month period, which could have been prosecuted as individual felonies under section 2101, are now treated as a single felony by the CCCA, thereby narrowing the total available penalty. This new mode of defining and punishing the crime of knowing receipt and possession of unlawfully obtained property in the CCCA is inconsistent with the traditional treatment of those same acts under section 2101 as possession of stolen property.

Two provisions are "inconsistent" if they are "mutually repugnant or contradictory," that is, if the "establishment of the one implies the abrogation of the other." *See* BLACK'S LAW DICTIONARY 766 (6th ed.1991). The government argues that there is no inconsistency between the crimes described in section 2101 and section 3004, respectively. We disagree. Although each statute defines a felony if the value of the property received exceeds one hundred dollars, the CCCA aggregates the total value of property and services received within a six-month period into a single offense and limits punishment to a maximum prison term of three years and a fine of not more than $3,000, whereas section 2101 defines each instance of buying, receiving, or possessing stolen property during that same six-month period as a separate offence punishable by a prison term of ten years and a $5,000 fine.

First, section 3004 limits a court to imposing a single penalty for the sum of all acts described thereunder occurring within a six-month period. Section 2101, on the other hand, allows separate penalties for each act of buying, receiving, or possessing stolen property. Second, the penalty provision of 2101(a) is inconsistent with the penalties established under sections 3004 and 3010(b). Section 3010(b), the CCCA's penalty provision, read in combination with

section 3004 provides a total maximum penalty of *three years* imprisonment or *a $3,000 fine* or both, if the total value of property received or possessed through credit card fraud in any six-month period exceeds one hundred dollars. Section 2101(a) provides an inconsistent maximum penalty of *ten years* imprisonment or *a $5,000 fine* or both, if the value of the stolen, received, or possessed property equals or exceeds one hundred dollars. The establishment of a violation of section 3004 necessarily abrogates the right to punish that violation with any sentence greater than three years, e.g., under section 2101. Section 3014, therefore, precludes the application of section 2101 to the patently inconsistent felony provisions of section 3004 and 3010.

The inconsistent penalty provision of section 2101 and the CCCA are not severable from the underlying offenses described in sections 2101 and 3004, respectively. Without a sentence and a verdict, there is no conviction. Therefore, if there can be no sentence under section 2101's sentencing provisions, because it is inconsistent with the CCCA, then there can be no conviction under section 2101 either. Thus, Walker's convictions under section 2101 are void and must be vacated.

We distinguish this case from *Government of the Virgin Islands v. Graves*, 16 V.I. 104, 593 F.2d 223 (3d Cir.1979). In *Graves*, the court vacated the appellant's sentence on two counts of violating section 3004 and remanded for a "general sentence" encompassing both convictions. *See* 16 V.I. at 112 n. 10, 593 F.2d at 228 n. 10. (citing *United States v. Corson*, 449 F.2d 544 (3d Cir.1971) (en banc) (requiring general penalty for different counts under bank robbery statute)). The issue facing the *Graves* Court was whether both sentences could stand, not whether separate convictions could be had under section 3004 for individual violations within a six-month period. *See* 16 V.I. at 110, 593 F.2d at 227 ("only viable issue" is whether "district court ... imposed a sentence on

Graves that exceeded permissible limits").[9] The opinion's offhand comment that "nothing in our construction of § 3004 precludes the government from prosecuting each separate violation of § 3004 [within a six-month period] and obtaining multiple convictions based on proof of each separate use" is pure dictum. *See* 16 V.I. at 113 n. 11, 593 F.2d at 228 n. 11.

We decline to follow this dictum in *Graves*, and instead hold that section 3004's six-month limitation is a charging provision, which defines the crime. First, the Legislature chose to place this six-month limitation within section 3004, the definitional charging provision, not section 3010, the penalty provision. Second, even if the application of the six-month limitation were ambiguous, the rule of lenity in such cases requires us to interpret it in the appellant's favor. Third, to hold otherwise would create the anomaly, for example, that a person could be tried on several misdemeanors involving only $75 each, and yet be sentenced under a felony penalty provision if the sum total of the counts exceeded $100.[10]

Additionally, we find that the CCCA, as a later, more specific and comprehensive statute, renders the older, extremely general section 2101 inapplicable, at least with respect to "credit card fraud" as defined in the CCCA. *See Estate of Romani*, 523 U.S. at 530–31, 118 S.Ct. 1478 (later, more specific statute with its comprehensive provisions should control interpretation of older statute). Title 14, section 2101 of the Virgin Islands Code (buying, receiving or possessing stolen property) is part of a general criminal statute having origins that go back at least as far as the 1921 St. Croix Code. The CCCA, on the other hand, was enacted in 1972 specifically to address credit card crimes. The CCCA is not only the more recent and the more specific enactment, but it also carves out and treats separately and comprehensively the criminal use of credit cards, even providing separate penalties and making inapplicable provisions "inconsistent with the terms of this chapter." *See* 14 V.I.C. § 3014. Thus the Legislature's enactment of the CCCA controls and precludes section 2101's general prohibition of possessing stolen property from applying to credit card activity made criminal by section 3004.

Accordingly, the government improperly charged and the trial court erred in permitting the conviction of Walker and then sentencing him under section 2101(a). We hold that the government may not prosecute a credit card offense under section 2101(a), because such prosecution would circumvent the plain language and legislative intent expressed by the CCCA. The convictions on Counts III and V are void and must be vacated.

### C. Counts One, Two, and Four are Void and Must Be Vacated because the Government Confessed Error on Issues (2), (3), and (4).

Counts I, II, and IV must be vacated. The government confessed, *inter alia*, that it failed to charge and prove an essential element of these offenses, to wit, Walker's intent to defraud. We therefore have vacated his convictions on the three section 3004 counts, I, II and IV.

We briefly mention the government's other confessions of error. The government confesses that trying and convicting Walker on Counts I and II, which alleged

---

**9.** Further distinguishing *Graves* and *Corson* from this appeal is that those cases did not deal with inconsistent penalty provisions, between a general statute and a later enacted, more specific statute.

**10.** *See Graves*, 16 V.I. at 112–13, 593 F.2d at 228 ("To effectuate the statute's purpose in differentiating between the lesser and greater penalties prescribed, the proofs must focus on the total sum of all goods, services or money fraudulently obtained within the relevant six-month period rather than on the number of separate transactions in which the defendant has engaged. Thus, an essential element in the government's proof of a violation of § 3004 must be the total sum of all services obtained by credit card fraud in the six-month period.").

two separate offenses of fraudulently purchasing a single Rolex watch, because Walker used two credit cards, violated the Double Jeopardy Clause. The government also confesses that the trial judge violated the maximum penalty provision of 14 V.I.C. § 3010(b) by sentencing Walker to three separate (although concurrent) three-year terms for Counts I, II, and IV. Even if Walker were retried and these errors were corrected, the maximum sentence Walker could receive consistent with our Opinion in this matter would be three years and a $3,000 fine. Therefore, we have ordered that he be released from custody, as he has already served more than three years in prison.

## III. CONCLUSION

This Court vacated Walker's conviction and sentence on June 1, 2000 with respect to all five counts. The harsh sentence imposed on Walker violated his due process right to a fair sentencing procedure, because the sentence constituted punishment for his assertion of his right to a trial. Further, the convictions on Counts III and V were vacated, because 14 V.I.C. § 2101(a) is inconsistent with 14 V.I.C. § 3010, and, therefore, 14 V.I.C. §§ 3014 precluded the government from charging Walker under section 2101(a). Counts I, II and IV were vacated because the government confessed error by, *inter alia,* not charging and instructing the jury on the intent requirement under 14 V.I.C. § 3004.