

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2001

# Virgin Islands v. Walker

Precedential or Non-Precedential:

Docket 00-1943

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Virgin Islands v. Walker" (2001). *2001 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1943

GOVERNMENT OF THE VIRGIN ISLANDS,
     Appellant

v.

CHARLES WALKER

Appellate Division of the District Court
for the Virgin Islands
Criminal Action No. 98-cr-00196-1
District Judge: Honorable Thomas K. Moore

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2001

Before: McKEE, RENDELL & BARRY, Circuit Judges

(Filed: August 16, 2001)

     Maureen P. Cormier, Esq.
     Office of Attorney General of
      Virgin Islands
     Department of Justice
     48B-50C Kronprindsens Gade,
     GERS Building
     Charlotte Amalie, St. Thomas
     USVI, 00802

     Attorney for Appellant

Gary M. Alizzeo, Esq.
Dudley, Topper & Feuerzeig
P.O. Box 756,
 1A Fredericksberg Gade
Charlotte Amalie, St. Thomas
USVI, 00804

     Attorney for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

The Appellate Division of the Virgin Islands vacated Charles Walker's sentence and reversed his convictions after a jury found him guilty on all five counts of an indictment charging him with credit card fraud and possession of stolen property. The Government of the Virgin Islands appeals. For the reasons set forth herein, we will reverse in part and affirm in part.

I.

Briefly stated, the circumstances leading to Walker's arrest and conviction are as follows:[1]

Walker arrived in the Virgin Islands from his home in Atlanta, Georgia on November 5, 1996 with another man, Earl Gunn. While in the Virgin Islands, the men purchased approximately $16,889 worth of jewelry with fraudulent credit cards. The day after the purchases, police apprehended Walker and Gunn at the airport after a customs official there discovered nine credit cards bearing different names in Walker's carry-on-luggage during a routine search. Walker and Gunn were thereafter charged with credit card fraud and possession of stolen property.

_____

1. Inasmuch as a detailed recitation of the facts can be found in the opinion of the Appellate Division of the District Court of the Virgin Islands, see Walker v. Government of the Virgin Islands, 124 F. Supp.2d 933 (D.V.I., 2000), we need only reiterate those facts to the extent they may be helpful to our brief discussion.

Gunn subsequently pleaded guilty to one count of credit card fraud. Walker proceeded to trial where he testified in his own defense. He admitted committing the acts that gave rise to the charges against him. However, he claimed that he acted under duress. According to his testimony, a group of unknown men had threatened to harm his daughter if he did not fly to the Virgin Islands, pick up a Rolex watch and bracelet, fly back to Atlanta, and deliver the goods. Although the jurors may have been amused by Walker's testimony, they were not persuaded by it. The jury was apparently more impressed by the proof of Walker's guilt than by his credibility. He was convicted on all counts.

He thereafter appealed to the Appellate Division of the Virgin Islands which reversed the convictions and sentence. The Government of the Virgin Islands now appeals that reversal to us. We have jurisdiction under 18 U.S.C.S 3731, and 48 U.S.C. S 1613. See Government of Virgin Islands v. Charleswell, 24 F.3d 571, 574-75 (3d Cir. 1994). We review the sentence that was imposed for abuse of discretion inasmuch as it did not exceed the statutory limits of the applicable statute. United States v. Pollen, 978 F.2d 78 (3d Cir. 1993). We exercise plenary review over the district court's determination of questions of law. United States v. Bennett, 100 F.3d 1105, 1108 (3d Cir. 1996).

II.

Walker was convicted of two counts of violating 14 V.I.C. S 2101(a), possession of stolen property (Counts III and V), and three counts of violating 14 V.I.C. S 3004, credit card fraud (Counts I, II, and IV). The Appellate Division found 14 V.I.C. SS 3004 and 3010, the respective Credit Card Crimes Act ("CCCA") charging and penalty provisions, to be inconsistent with 14 V.I.C. S 2101. The Appellate Division reasoned that the "[t]wo provisions are `inconsistent' if they are `mutually repugnant or contradictory,' that is, if the `establishment of one implies the abrogation of the other.' " Walker, 124 F. Supp.2d at 941 (citing BLACK'S LAW DICTIONARY 766 (6th ed. 1991)). The court found an inconsistency with respect to the specific manner in which each statute determines the value of the property received. The court noted that while "the CCCA aggregates the total value of

property and services received within a six-month period into a single offense" and is accompanied by a more lenient maximum penalty, section 2101 "defines each instance of buying, receiving, or possessing stolen property during that same six-month period as a separate offense" punishable by a significantly harsher maximum penalty. In determining that the CCCA imposed a limit on the number of convictions that can be obtained under the statute, the Appellate Division dismissed our language in Gov't of Virgin Islands v. Graves, 593 F.2d 223 (3d Cir. 1979), to the contrary, as "pure dictum." In Graves, we stated that "Nothing in our construction of section 3004 precludes the government from prosecuting each separate violation of section 3004 and obtaining multiple convictions based on proof of each separate use." Graves, 593 F.2d at 223, n. 11.

The Appellate Division thus concluded that Walker's credit card offense could be charged only as an offense under the CCCA. However, the Appellate Division then determined that "the Government [had] confessed error in that, inter alia, it failed to charge and prove an essential element of [14 V.I.C. S 3004] to wit: Walker's intent to defraud." Walker, 124 F. Supp.2d at 942. The court therefore vacated his convictions on counts I, II, and IV, the counts that charged a violation of section 3004.

III.

The Government argues that the Appellate Division erred in two respects: (1) it incorrectly ruled that Walker could be charged and convicted under only the CCCA; and (2) it ruled that there is a limit on the number of convictions that can be obtained under the CCCA. We agree with the government on both points.

The Appellate Division concluded that the CCCA is the exclusive statute governing credit card offenses, so that Walker was improperly charged under the more general statute that criminalizes the possession of stolen property as well. However, this view of the scope of the CCCA is directly contrary to the clear language of the CCCA. Section 3014 of the CCCA reads:

4

> This chapter (sections 3001-16) shall not be construed
> to preclude the applicability of any other provision of
> the criminal law of the Virgin islands which presently
> applies or may in the future apply to any transaction
> which violates this chapter, unless such provision is
> inconsistent with the terms of this chapter.

14 V.I.C. S 3014. In the face of this language, we cannot
conclude that the Legislature intended to make the CCCA
exclusive.

The only issue, then, is whether the stolen property
statute is "inconsistent with the terms" of the CCCA. The
Appellate Division found the statutes to be inconsistent
based upon the charging and penalty provisions of the two
statutes. It viewed section 3004 as limiting a court to
imposing a single penalty for the sum of all acts described
thereunder occurring within a six-month period. Section
2101, on the other hand, allows separate penalties for each
act of buying, receiving, or possessing stolen property.
Accordingly, it reasoned, the penalty provisions of the two
statutes are inconsistent. However, we do not believe that
because the provisions of the two statutes are different,
they are necessarily inconsistent. Rather, inconsistency
means that they cannot coexist or be reconciled. Here,
there is nothing inconsistent between the two crimes, and
neither one allows conduct that is barred by the other or
bars conduct that is allowed by the other. We cannot
conclude that the provisions of the two statutes are
"inconsistent" merely because they treat instances of crime
and punishment in different ways, with different policies
underlying each criminal provision.

The Appellate Division's reasoning regarding
inconsistency depends in some measure on its reading of
our opinion in Graves. The Appellate Division "held" that
section 3004's six-month limitation was a charging
provision that defines the crime. Because section 3004
limits the charging in this fashion, while section 2101
allows separate penalties for each act of buying, receiving
or possessing stolen property, the Appellate Division
concluded that the statutes were inconsistent. However, we
note that in Graves, we reasoned to the contrary and --
notwithstanding the Appellate Division's view -- concluded

5

that the Government could prosecute each separate violation of section 3004 and obtain multiple convictions based on proof of each separate use. Thus, Graves seriously undermines the Appellate Division's reasoning as to how section 3004 should be interpreted and, accordingly, lends little support for the "inconsistency" that it found.

Therefore, we reject the analysis of the Appellate Division with respect to the exclusivity of the CCCA and the way the provisions are to be interpreted, and we hold that section 3004 of the CCCA is not inconsistent with section 2101(a).

Accordingly, because we conclude that Walker could be charged with violations of both statutes, we will reverse the District Court's "voiding" of Walker's convictions on Counts III and V, charging possession of stolen property. However we will not reinstate his convictions for violating section 3004, because in its reply brief the Government stated:

> The Government has confessed that, applying the Blockburger test to the specific facts of this case as charged, the defendant could not be sentenced for the three counts of fraudulent use of a credit card in addition to the two counts of possession of stolen property. Therefore, the Government has agreed that on remand, it will move to vacate and dismiss the three credit card counts, pursuant to the procedure set forth in Ball v. United States, 470 U.S. 856 (1985) (citation omitted).

Reply Br. at 4. Given this concession, we will not reinstate the convictions for violating section 3004 set forth in the remaining counts.

IV.

The Government also argues that the Appellate Division erred in vacating Walker's sentence. The Appellate Division vacated the sentence because it concluded that the trial judge punished Walker for exercising his constitutional right to proceed to trial and thereby denied him his Fifth Amendment right to due process of law. Walker, a first-time, nonviolent offender, received the maximum 23 years in prison after he was convicted of these offenses.

The record of the pretrial conference reveals that the trial judge inappropriately injected himself into the plea negotiations to the extent of reformulating the offer that the Government made to Walker and his co-defendant, Gunn. Even though the Government had offered both defendants a "deal," the trial judge announced:

> If one plea and he wants some consideration to testify and go for broke against the other, I will. Whoever wants to plea and take the two years, credit for time served and suspended sentence provided he testify against the other person, yeah, I would go with that. I would go with that. Whoever wants to plea and testify against the other one, I would go with that.

App. at 90. The following exchange occurred when defense counsel tried to remind the court that the Government's offer extended to both defendants:

> Defense: But the plea was offered to both, Your Honor.
>
> The Court: But I'm not going to accept the plea for both. I'll accept the plea for one and on the condition that the other one testify against the other. If not, then the two of them go for broke and call it that. I have no problems with that.
>
> Defense: But in actuality, you're only saying one person can accept the deal that the Government offers?
>
> The Court: Because whoever comes in first gets the deal.
>
> Gov't: But there's nothing barring the Government from making a second offer, maybe not as sweet but --
>
> The Court: Well, I know it can't be too sweet the second time around.
>
> Gov't: I understand that, but the Government-- if the Government would make that offer.

7

> The Court: Whoever comes in first that's it. If they
> don't come in then we go to trial, go for
> broke.

Id. at 94-96. This intrusion into the plea negotiations would be sufficient by itself to raise serious issues about the propriety of the trial court's actions and the impact of the court's "activism" on Walker's Fifth Amendment rights. However, the trial court did not stop there. Gunn accepted the Government's offer, and Walker was present during his change of plea proceeding. During that proceeding the trial court appeared to become irritated when defense counsel argued for a lower fine for Gunn.

> The Court: I might want to scuttlebutt the deal. I
> might want to reject the plea offer and go
> for broke with the big 12.
>
> Counsel: No, no, sir. I would concede 1,500
> [dollars] is in order.
>
> The Court: The big 12 would be ready October 31st if
> Mr. Gunn wants to take a chance with
> the big 12. Ask him if he wants to take a
> chance with the big 12 and go for broke
> for everything.
>
> Counsel: We already discussed that. He said, no.
>
> The Court: He's facing 30 something years. If he's
> going for broke, that's fine with me.

Id. at 129. The court finally accepted Gunn's plea of guilty to violating 14 V.I.C. S 3004, and sentenced him to time served and a $1500 fine. The judge then told Gunn, in Walker's presence, that Gunn was "very lucky," and that his attorney could tell him that "had you gone to trial on this, no way you were going to get this kind of sentence." Id. at 142. After Walker exercised his right to a jury trial and was convicted, the court reminded him that he had been offered a "sweety deedie plea," but failed to accept it. App. at 507.

After a careful examination of the record, we conclude that the Appellate Division correctly determined that the sentencing court sentenced Walker to the maximum of two

8

consecutive ten-year terms, followed by three concurrent three-year terms and a fine of $13,000, primarily because Walker exercised his constitutional right to a jury trial. As the Appellate Division stated: "[t]he harsh sentence imposed on Walker violated his due process right to a fair sentencing procedure, because the sentence constituted punishment for his assertion of his right to a trial." Walker, 124 F. Supp.2d at 943.

A sentencing court can, of course, reject the results of a plea negotiation if it concludes that the resulting agreement is not in the best interest of justice. Here, however, the trial court's actions exceeded all conceivable limitations of propriety. As the Appellate Division correctly observed, the trial court's involvement merged into the "prosecutorial function properly left to the executive branch." Walker, 124 F. Supp.2d at 938. "Even the appearance of siding with the government to dissuade a defendant from asserting his constitutional right to a trial is prohibited." Id., citing United States v. Stockwell, 472 F.2d 1186, 1187-88 (9th Cir. 1973) ("[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice."). In Longval v. Meachum, 651 F.2d 818 (1st Cir. 1981), the Court of Appeals for the First Circuit stated: "[a] judge who participates in plea bargaining `is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.' " Id. at 821. After reviewing this record, the Appellate Division concluded that:

> [t]he extreme disparity of sentences imposed on Walker and Gunn, the harshness of Walker's sentence for a first-time, nonviolent offense, the judge's implicit threats and coercive involvement in plea negotiations, . . . all raise the inference that [the trial judge] gave undue consideration to Walker's refusal to plead guilty, and that his insistence on a jury trial impermissibly influenced [the trial judge's] imposition of the maximum sentence of twenty-three years. Such abuse of discretion, regardless of what other, legitimate factors the judge may have considered in sentencing Walker, was constitutional error.

9

Walker 124 F. Supp.2d at 938. We agree. Accordingly, the defendant is entitled to resentencing for the convictions that we reinstate.

V.

Walker asks that we assign this matter to a different judge upon remand. Although "[i]t is the standard practice in the district courts and in this circuit that a case on remand is assigned to the judge who originally heard it," we can, in the exercise of our supervisory power, reassign this case to a different judge upon remand. United States v. Baylin, 696 F.2d 1030, 1043 n.30 (3d Cir. 1982). Although we have not formulated a specific test for determining when reassignment to a different judge is in order, in Alexander v. Primerica Holdings, 10 F.3d 155 (3d Cir. 1993), we stated:

> impartiality and the appearance of impartiality in a judicial officer are the sine quo non of the American legal system. Because justice must satisfy the appearance of justice, it is our responsibility to exercise our supervisory authority, as reluctant as we always are to do so when it requires the reassignment of a case . . . . We must preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice.

Id. at 167 (internal citations, quotations omitted). Inasmuch as the aforementioned conduct and comments of the trial judge here make it exceedingly difficult to resurrect an appearance of impartiality without remand to a different sentencing judge, we conclude that Walker's request for reassignment must be granted.

VI.

In his brief to the Appellate Division, Walker raised, inter alia, additional arguments including his assertion that the trial court erred by placing the burden of proving duress on him rather than on the Government. The Government did not respond to these issues and the Appellate Division did

not reach them, as it based its reversal of the Territorial Court on the Government's confession of error as to Counts I, II, and IV. Inasmuch as the Appellate Division has not ruled on these additional grounds for relief, we will not now address them in the first instance. See Charleswell, 24 F.3d at 573 ("The arguments that [defendant] raises in his cross-appeal were . . . not addressed by [the Appellate Division], and we decline to address these arguments in the first instance. Instead, we will remand so that they can be decided initially by the Appellate Division."). Accordingly, we will remand to that court so that it may consider Walker's remaining arguments.

VII.

For the reasons set forth above, the June 5, 2000 decision of the Appellate Division is reversed insofar as it vacated Walker's convictions for violating 14 V.I.C.S 2101, possession of stolen property. In all other respects, that order of the Appellate Division will be affirmed. As explained above, we will remand this case to the Appellate Division for further proceedings. If the Appellate Division should rule against the defendant, that court shall remand Walker's case to the Territorial Court with instructions that the case be assigned to a different judge for resentencing.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11