Xiao YI,

v.

**IMMIGRATION & NATURALIZATION
SERVICE et al.**

No. 02–CV–1314.

United States District Court,
E.D. Pennsylvania.

April 17, 2003.

Thomas M. Griffin, Law Offices of Bagia & Morley, Philadelphia, PA, for Petitioner.

Virginia A. Gibson, Philadelphia, PA, for Respondent.

### MEMORANDUM OPINION

RUFE, District Judge.

Before the Court is the Amended Petition for Writ of Habeas Corpus of Yi Xiao [1] and the Government's response thereto. Xiao, who is currently in the Montgomery County Prison, seeks review of the decision rendered by the Board of Immigration Appeals ("BIA"), which denied him relief in the form of deferral of removal pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 I.L.M. (1985) ("CAT"). Xiao contends, *inter alia*, that his procedural due process rights were violated when the Immigration Judge refused to grant a continuance and refused to allow him to testify in support of one of his CAT theories, or, alternatively, that he was denied effective assistance of counsel as a result of his attorney's failure to state a sufficient factual basis for

the continuance and failure to adequately prepare the case for CAT relief. For the reasons set forth below, Xiao's Petition for Writ of Habeas Corpus is GRANTED.

### BACKGROUND

In 1995, Xiao, a Chinese native and citizen, and his family entered the United States and obtained legal permanent resident status. On June 2, 2000, Xiao was convicted of grand larceny in the third degree in violation of Section 155.35 of the New York State Penal Law. On June 28, 2000, Xiao was convicted of grand larceny in the first degree in violation of Section 155.35 of the New York State Penal Law. The convictions stemmed from Xiao's misappropriation of funds belonging to several entities, including CIIC Group, USA, Ltd., a subsidiary of a Beijing company and an entity that Xiao contends the Chinese government controls. As a result of his convictions, Xiao was subsequently sentenced to serve two to six years in prison.

On October 24, 2000, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, which informed Xiao that, as a result of his convictions, he was removable from the United States pursuant to § 237(a)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A). On January 5, 2001, Xiao first appeared via video for an initial hearing before Immigration Judge Alan Vomacka ("IJ"). At that time, Xiao was advised of his rights, including his right to be represented by counsel at his own expense. On February 5, 2001, Xiao reported to the Immigration Court that he had contacted, yet not formally retained, an attorney. Paulus H. Chan, Esquire ("Attorney Chan") subsequently entered his appearance on behalf of Xiao.

---

**1.** In the Amended Petition, Yi Xiao notes that his name is incorrectly captioned.

After several brief continuances due to Attorney Chan's recent retention as well as a scheduling conflict, the case was listed for hearing on April 13, 2001, at which time the IJ advised Xiao that he was not eligible for relief under § 212(h),[2] noting that CAT relief appeared to be the only potential relief available to Xiao. Notes of Testimony at 38. The IJ explained to Attorney Chan that in order to prevail Xiao would bear the burden of proving the likelihood of future torture. Although the IJ indicated a willingness to continue the case, possibly for as long as six months, so that Xiao could develop the CAT claim, he advised counsel that he planned on listing the case for a hearing in mid-July 2001. N.T. at 38–39. Xiao was subsequently directed to submit an application seeking deferral of removal based upon the CAT by April 24, 2001, which he subsequently did, and the case was re-listed for a hearing on July 25, 2001.

On or about July 12, 2001, Xiao filed a written Motion for Continuance seeking to have the July 25, 2001 hearing continued pursuant to 8 C.F.R. § 3.29. In his Motion for Continuance, Xiao stated that his torture case was based, in part, on events that occurred approximately one decade ago in China and that he needed additional time to procure documentary evidence from that country. Motion for Continuance ¶¶ 2–6. The Motion also stated that progress had been made in locating witnesses who were willing to supply corrobo-

rating testimony. *Id.* The Motion contained an averment that Attorney Chan believed that the INS did not oppose the request. *Id.* ¶ 10. By Order dated July 12, 2001, the IJ denied the Motion for Continuance on the ground that Xiao did not indicate what evidence was being sought, how the evidence was relevant to the torture claim, and what period of time would be sufficient to procure the evidence. In his decision, however, the IJ noted that his ruling was without prejudice to possible adjournment of the proceedings after all of the evidence was presented at the hearing.

At the July 25, 2001 hearing, Xiao testified that he believed that he would be persecuted and tortured if he returned to China for several reasons, including his religious beliefs and his past involvement with a joint venture with the provincial government. Later in the proceedings, Xiao testified that because he was convicted of stealing from a company owned by the Beijing government, he also feared torture on that basis.[3] N.T. at 143–45. During the presentation of evidence, Xiao's counsel renewed his motion for a continuance, noting that a six-week continuance was needed in order to procure medical records from Xiao's family doctor Hua Long Zhou and from a hospital in China.[4] Xiao indicated that he had just located a key witness named Zi Hong Wu who could corroborate his account of events and fur-

---

**2.** Section 212(h) provides for an extreme hardship waiver under limited circumstances; however, that section provides that no waiver shall be granted to an alien who has been convicted of an aggravated felony. *See* 8 U.S.C. § 1182(h). Because the grand larceny convictions constituted aggravated felonies under federal immigration law, Xiao was incapable of obtaining a § 212(h) waiver.

**3.** Prior to the hearing, counsel was instructed to file a Case Summary. Xiao's Case Summary noted that he intended to support his

CAT claims with testimony and corroboratory evidence from his accountant, family doctor, and a close personal friend, but that a continuance was needed to procure that evidence. Case Summary at 2–3.

**4.** At the July 25, 2001 proceeding, Xiao testified that he could not get the records because his family doctor had changed offices and because the records dated back approximately 8 years to 1993. N.T. 7/25/01 at 109. Xiao also noted that the records needed to be translated and notarized. N.T. at 107.

ther support his torture claim. N.T. at 110–11. Xiao acknowledged that, while he knew of the removal proceedings for approximately eight months, until April of 2001 he had been under the false impression that he could seek relief under § 212(h) and therefore he did not begin developing facts relating to the CAT claims until that time. The IJ denied the request for a continuance, finding that Xiao had sufficient notice of the need to obtain the evidence for at least three months prior to the hearing. N.T. at 120–22.[5]

While there was brief testimony that Xiao pleaded guilty to stealing monies from Chinese companies owned by the government and that he would be targeted for torture as a result of those convictions, the IJ refused to permit Xiao to develop this theory. N.T. at 142–43, 153–43. Specifically, the IJ ruled that the claim that the Chinese government would torture Xiao because of its financial losses stemming from the transactions leading to his guilty pleas was not a theory that had been presented in Xiao's Form I–589 Application, and therefore this new theory could not be advanced. N.T. at 145–48, 154–58, 163–64.[6]

At the conclusion of the hearing, the IJ rendered his findings of fact and conclusions of law in an Oral Decision. The IJ found that, based upon the record, there was no likelihood of torture as a result of Xiao's religious beliefs and past problems with the local government. The IJ noted that it was puzzling why Xiao did not have more evidence to support his claims since he was a sophisticated businessman who was represented by counsel and who had family available to assist him.[7] With respect to the claim that there would be torture due to the Chinese government's financial interest in companies that were the victims of Xiao's crimes, the IJ stated that the issue could not be tried by surprise, that it "had not fairly been developed," and that neither the INS nor the Court had "the opportunity to consider how it might be analyzed." Oral Decision at 20.

Xiao subsequently appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on grounds that the denial of the continuance and refusal to hear relevant evidence on the CAT claim resulted in a denial of his procedural due process rights and that the IJ erred by not finding that there was a likelihood of torture upon return. With respect to the continuance issue, the BIA wrote that the IJ allowed Xiao "ample opportunity to prepare and present his case before the court," and that Xiao "was given sufficient notice that his case was to go forward on the specified date." BIA Decision at 2. As far as evidence with respect to the claim that money had been stolen from the Chinese government, the BIA wrote as follows:

> We do not find sufficient evidence in the record supporting [Xiao's] contention that his criminal conviction in the United States would subject him to criminal

---

5. It should be noted that the record reveals considerable friction between Attorney Chan and the IJ, which may have stemmed from counsel's arriving one hour late for the hearing.

6. The IJ also indicated that this line of questioning was beyond the scope of cross-examination.

7. The IJ stated, "So why [Xiao] cannot get more evidence than he has is a puzzle to the Court and the explanations I have heard today have done nothing to decipher that puzzle. As far as the Court is concerned, the very weak documentation is a severe problem for [Xiao]'s credi[ ]ability. He should present everything he could possibly obtain. He has obtained very little and the reasons why the rest is lacking or vague." Oral Decision at 15–16.

prosecution and imprisonment in China. [Xiao's] testimony related to his claim that his grand larceny conviction involved money stolen from the Chinese government was vague and lacking details (Tr. at 166–72). We recognize that [Xiao] presented a copy of an affidavit in support of a search warrant dated March 24, 1999, which reflects that [Xiao] defaulted on transactions with a subsidiary of a Chinese company in Beijing in an amount over $2.5 million dollars. However, this document does not support [Xiao's] testimony that the prosecutor for the government in Beijing has hired a lawyer to investigate [Xiao's] activities (Tr. at 166). Despite being in the best position to provide documentary and additional testimonial evidence supporting his assertions, [Xiao] has failed to do so. *See Diallo v. INS*, 232 F.3d 279, 285 (2d Cir.2000). Therefore, we conclude that [Xiao] has failed to establish that it is more likely than not that he faces arrest, detention, and torture in China as a result of his grand larceny convictions in the United States.

BIA Decision at 3. The BIA dismissed the appeal and concluded that Xiao had failed to meet his burden of proving that it was more likely than not that he would face torture in China. *Id.*

On March 14, 2002, Xiao filed a *Pro Se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[8] By Order dated October 7, 2002, this Court appointed counsel and granted Xiao leave to file a counseled amended petition. On January 30, 2003, an Amended Petition for Writ of Habeas Corpus was filed. In the Amended Petition, Xiao asserts that the IJ denied his right to due process when he (1) denied him a continuance; (2) denied him the right to competent translations; and (3) improperly limited testimony on the torture claim with respect to the Chinese

government's interest in the defrauded companies, even though the claim had been raised in the I–589 Application. Xiao also contends that Attorney Chan rendered ineffective assistance of counsel for failure to state a sufficient factual basis for the continuance and for failure to adequately prepare the case for CAT relief.

On March 4, 2003, this Court presided over oral argument in this case and thereafter took the matter under advisement.

### DISCUSSION

▬▬ This Court maintains jurisdiction to consider petitions for writs of habeas corpus only with respect to legal or constitutional issues. *Liang v. INS*, 206 F.3d 308, 310 (3d Cir.2000). Though deportation is not a criminal proceeding, "it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted." *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Thus, aliens in removal proceedings have the right to due process under the United States Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

### A. Procedural Due Process Claims

▬▬ The Government must provide reasonable notice and the opportunity to be heard to satisfy the minimum requirements of due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Specifically, due process requires that Xiao: (1) be entitled to a fact-finding based on a record produced before a decision-maker and disclosed to him; (2) must be allowed to make arguments on his own

---

**8.** By Order dated July 10, 2002, this matter was randomly reassigned to the undersigned.

behalf; and (3) has the right to an individualized determination of his interests. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir.2001).

■ Xiao alleges that his due process rights were violated as the result of the denial of a continuance, incompetent translations, and his being unable to present evidence relating to a CAT claim that was presented in the I–589 Application. In order to sustain a due process challenge to a deportation proceeding, the alien must establish actual prejudice. *See Sarvia– Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir.1985); *see also Patel v. INS*, 803 F.2d 804, 807 (5th Cir.1986).

### 1. Continuance

■ Immigration regulations provide that an immigration judge may grant a motion for a continuance for good cause shown. 8 C.F.R. § 3.29.[9] The regulations, however, do not define *good cause*, and there are no bright light rules in determining what constitutes the same. Nevertheless, "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the alien's statutory rights an empty formality." *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988). Factors which should be considered when determining whether an IJ abused his or her discretion in denying a continuance include: (1) the inconvenience to the Immigration Court; (2) the nature of the evidence to be presented and its importance to the alien's claim; (3) whether the need for a continuance is based upon the alien's reasonable conduct; and (4) the number of prior continuances granted to the alien and their duration. *Id.* at 93.

■ Looking at the first factor, while it is true that a continuance would inconvenience the Immigration Court, any disruption would have been minimal. Xiao's attorney filed the written Motion for a Continuance nearly two weeks prior to the July 25, 2001 hearing. Because the Motion was filed in advance, it would have been possible for the IJ to grant a continuance prior to the commencement of the hearing with minimal inconvenience to the parties, counsel, and the Immigration Court. In fact, the Motion alleged that it was believed that the INS had no objection to the granting of the continuance. Moreover, only months earlier the IJ himself indicated that he may be agreeable to continuing the case for up to six months.

The second factor also weighs in favor of Xiao. Xiao sought to obtain medical records from his physician and a hospital in China that allegedly showed past torture. There was an indication that Xiao's family doctor's office had a new address, that the office had been contacted, and that the records were in the process of being translated and notarized. While past torture does not necessarily prove future torture, the medical documentary evidence was important because it could have corroborated Xiao's claims of prior torture. Moreover, the accounting records that Xiao sought may have shed light on the inter-relation between the various entities and the Chinese government. Finally, there was evidence that Xiao had recently located a witness in New York who also could substantiate his CAT claims. In this Court's opinion, this evidence would have been very important to Xiao's case.

The third consideration is whether the need for a continuance is based upon the alien's reasonable conduct. The evidence reflects that Xiao did not learn of the fact that he was ineligible for relief under § 212(h) until April of 2001. Additionally, there was evidence that substantial prog-

---

9. This section was redesignated as § 1003.29 on February 28, 2003.

ress had been made to procure the evidence and locate the witness in question, despite the fact that the records were overseas and that Xiao was incarcerated. Under the circumstances, it appears that Xiao acted with reasonable diligence.

In considering the remaining factor, the record reveals that the Court had previously granted several continuances to Xiao. Yet these continuances were granted so that Xiao could retain counsel and due to his counsel's scheduling conflict—not as a method to delay the proceedings. Importantly, the Motion for Continuance was timely filed approximately two weeks prior to the July 25, 2001 hearing and apparently was unopposed by the INS.

In its Order denying the Motion, the IJ stated that the Motion "does not indicate any period of time that would be, or might be, sufficient to obtain the evidence," July 12, 2001 Order, even though the Motion specifically requested a continuance until September of 2001. While it is true that the Motion only generally stated why a continuance was necessary, the averment that overseas records were being obtained should have been sufficient. Under these circumstances, this Court is constrained to find that the IJ abused its discretion in failing to grant a continuance and that the BIA erred in sustaining the IJ's ruling in this respect. The Court finds that the denial of the continuance deprived Xiao of the opportunity to obtain meaningful review of his claims and therefore constituted a violation of his procedural due process rights.

## 2. Denial of Opportunity to Present Evidence

Alternatively, the Court grants habeas relief on the ground that Xiao was denied a full and fair hearing when the IJ interfered with his ability to present his theory that the Chinese government was the victim of the crimes to which he pleaded guilty. The IJ refused to consider this CAT claim based upon his belief that it was not pleaded in the Asylum Application, and the BIA sustained the ruling on the ground that Xiao "had ample opportunity to prepare and present his case before the court." BIA Decision at 2.

During the hearing, the following exchange took place between the IJ and counsel:

BY THE IMMIGRATION JUDGE:

Q. Do you have any redirect for your client? That's all I want to hear.

A. Well it all depends on if you allow me to bring up that particular topic—

Q. No, I'm not.

A. Which is—

Q. Because the asylum application which you filled out for the Torture Convention claim tells you that every reason should be listed in the application. When did it occur to you that the grand larceny conviction might have something to do with problem of going back to China? When did that cross—

A. It's—

Q. Your mind?

A. It's—

Q. Was it after—

A. So.

Q. You got the order—

A. No.

Q. I wrote you?

A. Yes, when I saw—

Q. Yes. After I told you—

A. When I saw.

Q. That your case seemed to be very weak, then you came up with another theory, right? Isn't that the sequence—

A. I—

Q. Of events?

A. I don't—

Q. First one thing—

A. I don't remember.

Q. Then the other?

A. I don't remember the exact timing when—

Q. Well, your memo or your memo is prepared when? Your case summary is what I'm referring to? Prepared July 24th.

A. It was signed on the—

Q. Yesterday.

A. It was signed on the 24th. It was prepared prior to that. It was signed.

Q. Why—

A. Because—

Q. Did you hold back, counsel? Surprise? Something new to keep us interested at the end of the hearing?

A. Again, I was under the impression from your memo that you would allow—

Q. You read the memo—

A. Oral testimony—

Q. And then you prepared the case summary and you tried to put in another reason why [Xiao] might qualify for relief, after you read the Court order that said your case was weak, then you prepared something that gives another reason. I'm not saying that's why, but that's the sequence, right? Okay. So I'm going to ask you—

A. I—

Q. Again, is there any redirect about what was covered already?

A. I need one more minute to review the affidavit which [is] part of the application [as] amended. I believe something was mentioned.

N.T. at 154–56.[10]

A review of the record reveals that Xiao specifically included in his application—

dated April 24, 2001 claims that he would be put "in jail for my conviction in the United States since Beijing government will have basis to blame me for their damages, i.e., loss of their Beijing's money." Application for Asylum and Withholding of Removal at 6. Additionally, an addendum to the Application states that Xiao's "criminal conviction (based on a guilty plea) in the United States will be another reason for the local government to torture me if I return to Chinese since these companies seeking my conviction were funded by Beijing's money." *Id.*[11] Notwithstanding that the claims were stated in Xiao's I 589 Application, the IJ refused to hear testimony on this issue and did not rule on this particular CAT claim when he rendered his Oral Decision.

The statute governing the conduct of removal proceedings provides that, under regulations of the Attorney General, "the alien shall have a reasonable opportunity … to present evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B). Additionally, the Fifth Amendment entitles aliens to due process of law, including the opportunity to be heard, in removal proceedings. *See Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *see also Moi Chong v. Dist. Dir. INS,* 264 F.3d 378 (3d Cir.2001).

◼ Because the IJ did not allow evidence, including Xiao's own testimony, in support of the claim that the Chinese government would likely torture Xiao as a result of his grand larceny convictions, which involved money stolen from the Chinese government, the Court finds that Xiao was denied a full and fair hearing and

---

10. Although the IJ subsequently allowed counsel to question Xiao on this subject area on an extremely limited basis, a review of the transcript demonstrates that Xiao was not given a fair and reasonable opportunity to develop this theory.

11. Xiao's counsel, however, neglected to attach an exhibit, an affidavit in support of search warrant, to Xiao's Application. *See* N.T. at 168–69.

that this prejudiced his ability to present evidence in support of his CAT claim. *See Colmenar v. INS,* 210 F.3d 967 (9th Cir. 2000). The evidence that Xiao sought to present was not cumulative and could have changed the outcome of the case. *See id.* at 972. Accordingly, a remand is necessary in order to afford Xiao a reasonable opportunity to fully develop and present evidence in support of this CAT claim.[12]

Because the Court grants habeas relief on the two grounds stated above, it is unnecessary to consider the remaining claims in Xiao's Amended Petition.

## CONCLUSION

In light of the above, Xiao's Amended Petition for a Writ of Habeas Corpus is GRANTED. Accordingly, this matter is REMANDED to the Immigration and Naturalization Service for a full hearing on the merits with respect to Xiao's CAT claims, including the claim that he will be tortured as a result of the grand larceny convictions due to the Chinese government's financial interest in the companies from which Xiao was convicted of stealing.

An appropriate Order follows.

## ORDER

AND NOW, this ―――― day of April, 2003, upon consideration of Yi Xiao's Amended Petition for Writ of Habeas Corpus [Doc. No. 19], and the Government's response thereto, after oral argument thereon, it is hereby ORDERED and DECREED that said Petition is GRANTED. The Decision of the Board of Immigration Appeals, dated February 14, 2002, dismissing Petitioner Yi Xiao's appeal is REVERSED. This action is REMANDED to the Immigration and Naturalization Ser-

vice for a full hearing in consideration of all of Xiao's CAT claims, including his claim that his New York grand larceny convictions involved money stolen from the Chinese government and therefore would likely subject him to torture, and in accordance with the aforesaid Memorandum Opinion. The Immigration and Naturalization Service shall not exclude or deport Petitioner Yi Xiao pending a decision from that hearing.

---

12. Because Xiao is presently detained in the Eastern District of Pennsylvania, it is unlikely that the same New York IJ who originally heard this case would preside over this matter upon remand. Nevertheless, in the exercise of its supervisory power, this Court specifically orders that this matter be reassigned upon remand. *See Virgin Islands v. Walker,* 261 F.3d 370, 376 (3d Cir.2001).