**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3122
_____

UNITED STATES OF AMERICA,
                                    Appellant

v.

CAROLYN JACKSON
_____

No. 21-3123
_____

UNITED STATES OF AMERICA,
                                    Appellant

v.

JOHN E. JACKSON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 2:13-cr-00290-001 & 2:13-cr-00290-001)
District Court Judge: Honorable Katharine S. Hayden
_____

Argued December 13, 2022
_____

BEFORE: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: April 3, 2023)

_____

OPINION*

_____

Mark E. Coyne
John F. Romano [ARGUED]
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
        *Counsel for Appellant*

Rubin M. Sinins
Herbert I. Waldman [ARGUED]
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins
505 Morris Avenue
Springfield, NJ 07081
        *Counsel for Carolyn Jackson*

David A. Holman
Carol Dominguez
Louise Arkel [ARGUED]
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102
        *Counsel for John E. Jackson*

RESTREPO, *Circuit Judge*

In 2015, a jury convicted John and Carolyn Jackson of multiple counts of endangering the welfare of their three foster children. The judge who presided over the trial sentenced the Jacksons for these convictions three times. The government appealed each sentence imposed. In vacating the prior two sentences, this Court remanded with instructions to sentence the Jacksons consistent with the jury's verdicts and federal

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

sentencing law. We regrettably conclude the sentencing judge has declined to follow our mandate for the third time, requiring us to again vacate the Jacksons' sentences. We find it appropriate to remand with the instruction that the case be reassigned to a different judge for resentencing.

## I.

We write only for the parties and therefore do not address the facts at length. In sum, Carolyn and John Jackson inflicted devastating abuse on their three young foster children—Joshua, J, and C—over the course of five years, causing serious and lasting harm. Pursuant to the Assimilated Crimes Act ("ACA"), the Jacksons were tried under New Jersey's endangering the welfare of children statute, N.J. Stat. Ann. § 2C:24-4a, because the abuse occurred on a federal military installation. Carolyn and John were charged in a fifteen-count superseding indictment. The charges consisted of a New Jersey conspiracy charge (Count 1), New Jersey substantive child abuse charges (Counts 2-12, 15), and federal assault charges (Counts 13-14). The District Court granted judgments of acquittal for the two federal assault charges at the close of the government's case. After a thirty-nine-day trial, the jury found Carolyn guilty of twelve counts (Counts 1-12), and John guilty of ten counts (Counts 1, 3-9, and 11-12).

Under Count 1, Carolyn and John were found to have conspired from August 2005 to April 2010 to engage in acts that endangered their three foster children. Under Count 7, they were convicted of withholding sufficient nourishment and food from C. Under Counts 3, 6, and 12, they were found guilty of physically assaulting all three children with various

3

objects and their hands. Under Counts 4 and 8, they were convicted of withholding adequate water from J and C and prohibiting these children from drinking water. Under Counts 5 and 9, the Jacksons were found guilty of forcing J "to ingest hot sauce, red pepper flakes and raw onion," and forcing C "to ingest hot sauce and red pepper flakes." A42, A46. Under Count 11, they were found to have withheld prompt and proper medical care for C's dehydration and elevated sodium levels.

In addition, Carolyn was also found guilty of Count 2, withholding sufficient nourishment and food from Joshua, and Count 10, "causing [C] to ingest excessive sodium and a sodium-laden substance while restricting [C's] fluid intake, causing [C] to suffer hypernatremia and dehydration, a life threatening condition." A47.

Prior to the first sentencing hearing in December 2015, the Probation Office calculated the United States Sentencing Commission Guidelines ("Guidelines") range as 210 to 262 months for both Defendants, and the government sought sentences of 235 months' imprisonment for Carolyn and 188 months' imprisonment for John.[1] The District Court imposed a sentence of 24 months' imprisonment for Carolyn, and 3 years' probation, 400 hours of community service, and a $15,000 fine for John. In vacating the first sentence, this Court held that assault is a sufficiently analogous federal offense for the purposes of sentencing under the ACA, and the District Court therefore committed procedural error by

---

[1] In their sentencing memorandum, both Defendants argued they should be sentenced in accordance with 18 U.S.C. § 3553 because there was no analogous federal crime to allow use of the Guidelines.

4

not applying the assault Guideline to the Jacksons' convictions when calculating their sentences.[2] *United States v. Jackson*, 862 F.3d 365, 376 (3d Cir. 2017) ("*Jackson I*"). *Jackson I* also held that the District Court erred by refusing to apply the preponderance of the evidence standard at sentencing. *Id.* at 390.

At the second sentencing hearing in April 2018, the government argued that the aggravated assault Guideline and other sentencing enhancements applied to multiple counts of conviction, resulting in a range of 210 to 262 months' imprisonment for Carolyn and 188 to 235 months' imprisonment for John.[3] The District Court applied the assault Guideline but ruled that only one of the children's injuries justified a sentence in the aggravated assault Guideline range. The Court ruled that the preponderance of the evidence proved that Carolyn was responsible for C's second bout of hypernatremia. The District Court calculated a Guidelines range of 46 to 57 months for Carolyn and 18 to 24 months for John but then varied significantly downward from those ranges, sentencing

---

[2] *See* United States Sentencing Commission, *Guidelines Manual*, §2A2.3 (assault), §2A2.2 (aggravated assault) (Aug. 2021).

[3] At oral argument, the government explained that the District Court ordered the Probation Office not to calculate Guidelines ranges for either defendant after the first sentencing hearing. The District Court struck the factual summary—which was provided by the government as a matter of course—from the Pre-Sentence Report and "asked probation not to do any analysis." Oral Argument at 13:03-04, *United States v. Carolyn and John E. Jackson* (Dec. 15, 2022) (No. 21-3122/23). For the two subsequent sentencings, only the government and defense counsel provided Guidelines calculations.

In his memorandum for the second sentencing, John suggested the proper Guidelines range for him was 8 to 14 months' imprisonment but that a sentence similar to the one he initially received was appropriate. Carolyn's memorandum claimed her Guidelines range was 6 to 12 months' imprisonment but that she should be sentenced to time-served.

Carolyn to 40 months' imprisonment and John to 3 years' probation plus 400 hours of community service. The government again appealed.

On appeal for the second time, this Court noted the jury's finding that the Jacksons' foster children suffered "at least ten unusual and serious injuries while in [their] custody." *United States v. Jackson,* 819 F. App'x 97, 100 (3d Cir. 2020) ("*Jackson II*"). These injuries included, for example, "a fractured bile duct, a brain injury, a fractured skull, a fractured humerus, a fractured spine, and a gangrenous finger" for victim Joshua, and for victim C, "a fractured humerus and two bouts of acute hypernatremia." *Id.* (internal citations omitted). In *Jackson II*, we held that the District Court "turned the preponderance of the evidence standard on its head" by viewing the injuries in isolation and crediting the Jacksons' experts over the evidence sustaining the verdicts. *Id.* This Court mandated that the District Court examine the children's injuries "together with the jury findings that the Jacksons were both guilty, beyond a reasonable doubt" of the conduct underlying the multiple counts, which included "repeatedly assault[ing] all three children in a variety of ways" as well as depriving them of food, water, and medical treatment. *Id.* *Jackson II* concluded that the government "adequately proved" the Jacksons caused "several of the children's serious injuries," which meant that the District Court erred in applying the aggravated assault Guideline to only one count of conviction. *Id.* at 101. *See* USSG §2A2.2.[4] Further, *Jackson II* concluded that the District Court erred in finding that the

---

[4] *Jackson II* explained that the assault Guideline includes a cross-reference to the aggravated assault Guideline. "Aggravated assault is defined . . . as any 'felonious assault that involved . . . serious bodily injury.'" 819 F. App'x at 99–100 (quoting USSG. §2A2.2

preponderance of the evidence did not support imposing an enhancement for the obstruction of justice for both Jacksons, given that the jury found them guilty of conduct they denied committing under oath. *Id.* at 102.

For the third sentencing in October 2021, the government calculated a Guidelines range for both Defendants of 108 to 135 months' imprisonment. The Jacksons calculated their Guidelines range as 57 to 71 months' imprisonment. The District Court imposed a sentence of 40 months' imprisonment (which it deemed time-served) plus a one-year term of supervised release for Carolyn, and an 18-month term of home confinement for John. In imposing this sentence, the District Court found the Jacksons responsible for two of the children's serious bodily injuries—one of C's bouts of hypernatremia and Joshua's gangrenous finger—and calculated a Guidelines range for both Defendants of 70 to 87 months. After applying the 18 U.S.C. § 3553(a) sentencing factors, the Court granted "substantial" downward variances. A9066.

The government appealed for the third time, claiming that the District Court failed to follow our mandate and committed reversible error. The government argues that the District Court failed to follow this Court's instruction to evaluate the children's injuries holistically in light of the guilty verdicts, deciding instead to "simply add[] one additional injury" to its aggravated assault Guideline calculation. Gov't Reply Br., 5. Arguing that

n.1). The Guidelines define serious bodily injury "as an 'injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.'" *Id.* (quoting USSG §1B1.1 n.1).

7

two serious injuries are less than "several," the government claims that the District Court again refused to make the requisite findings of fact under the preponderance standard as instructed by this Court in *Jackson II*. The government contends that this refusal to follow our mandate constituted reversible procedural error. We agree and therefore vacate the Jacksons' sentences.

## II.[5]

It is a well-established principle of law that a district court must follow an appellate court's mandate. *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) (citing *Ex parte Sibbald v. United States*, 12 Pet. 488, 9 L.Ed. 1167 (1838). In so doing, "[a] trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). Adherence to a mandate is required "by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982). Following a remand for a resentencing, a district court's failure to abide by the scope and substance of this Court's mandate constitutes reversible error. *United States v. Kennedy*, 682 F.3d 244, 253–54 (3d Cir. 2012). We review the District Court's adherence to the mandates in both *Jackson I* and *Jackson II* de novo. *Id.* at 253.

---

[5] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(b). The court's findings of fact are reviewed for plain error. *United States v. Brown*, 595 F.3d 498, 526 (3d Cir. 2010).

### a. Refusal to Abide by *Jackson II's* Mandate

In *Jackson II*, we remanded to the District Court with three specific instructions. *Jackson II*, 819 F. App'x at 101. First, we instructed the District Court to determine which was more likely: that the Jacksons caused the children's injuries, or that some other cause was responsible despite the jury's findings of physical assault, the withholding of food, water, and medical treatment, and the force-feeding of hot sauce and red pepper flakes. *Id.* at 100. We further instructed the District Court to credit the jury's findings that the Jacksons caused "several" of the "at least ten unusual and serious injuries" the children suffered while in the Jacksons' care. *Id.* at 100–01. After identifying those injuries, the District Court was directed to calculate commensurate aggravated assault Guideline sentences. *Id.* at 101. Finally, we instructed the District Court to apply the obstruction of justice enhancement. *Id.* at 101-02.

The District Court abided by the second and third components of our mandate. The District Court applied the aggravated assault Guideline to two groups of counts, which is facially consistent with our instruction to apply the aggravated assault Guideline to "several" groups of counts at the third sentencing. And the District Court applied the obstruction of justice enhancement.

Yet contrary to our directive to assess causation holistically, the District Court failed to do so. In *Jackson II*, we instructed the District Court to ask whether, for each grouping of counts, it is more likely than not that the Jacksons caused some severe bodily injury— which can be true even if each discrete injury more easily can be attributed to chance.

9

Despite stating at the outset of her oral opinion that she intended to apply this principle, the District Court nevertheless considered each injury in isolation. For example, rather than asking whether it was more likely than not that the Jacksons' repeated assaults caused at least one of Joshua's severe injuries (to his finger, bile duct, humerus, and skull), the District Court asked whether each discrete injury was likely caused by the Jacksons' physical assaults. With respect to C and J, the District Court repeated nearly the same analysis from prior sentencing hearings and found once more that the government had not "proved" that the Jacksons caused each individual injury. *See* A9039–40 (listing individual injuries). Such analysis directly contradicts our instruction to consider whether "not just one, but both, of C's bouts of hypernatremia were more likely to have been caused by the Jacksons' withholding of adequate water (for which they were convicted)," rather than "some other hypothetical, unproven occurrence cited by the Defendants' experts." *Jackson II*, 819 F. 225 App'x at 100–01.

In her analysis, the District Court did not discuss what inferences can be drawn from viewing each individual injury in context of all the injuries, their eerie similarities, and the nature of the Jacksons' convictions. She merely marched through each injury, explaining, as she had before, why she credited the Jacksons' witnesses and discredited the government's witnesses. In ignoring this court's mandate, the District Court committed reversible error.

### b. Reassignment to Different Judge

In addition to asking this Court to vacate the Jacksons' third sentence, the government requests this case be reassigned to a different judge for re-sentencing. This Court can exercise its supervisory power to reassign a case on remand if we deem such an action necessary. *Gov't of the Virgin Islands v. Walker*, 261 F.3d 370, 376 (3d Cir. 2001). We recognize that reassignment is an exceptional remedy. *United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir. 2012). The remedy is warranted where the appellate court deems it necessary to "preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice." *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167 (3d Cir. 1993) (quoting *Haines v. Liggett Group Inc.*, 975 F.2d 81, 98 (3d Cir. 1992)) (internal quotation marks omitted). We believe such a necessity exists here because it appears the District Court judge will have "substantial difficulty in putting out of her mind her previously expressed views" of the evidence and the Defendants. *United States v. Ming He*, 94 F.3d 782, 795 (2d Cir. 1996).

During the second resentencing hearing, the District Court demonstrated a hesitance to follow our instruction to view the children's injuries holistically and in the context of the jury's findings of guilt. Instead, the District Court based its sentencing decisions on its own theory that the Jacksons made misguided parenting choices. *See Jackson II*, 819 F. App'x at 101 n.8. It reasoned that "this is a family case" where "[e]verything turns inward," making it impossible for anyone—including the members of the jury presumably—to know whether the children's serious injuries were caused by the Jacksons'

criminal conduct. A9070–71. After positing that the verdicts were essentially unsupported by the record, the District Court questioned whether punishment was necessary under the circumstances. We conclude this reading of the record is contrary to our instruction to implement the jury's findings that the Jacksons inflicted cruel and devastating abuse on three young children over the course of five years.

Disregarding this Court's enunciation of the law and clear instruction, the District Court asserted that determining the extent of the harm under the preponderance standard raised a "lurking Constitutional issue." A9021. This adherence to an incorrect interpretation of the law resulted in reversible procedural errors for the third time.

Finally, we note that our decision to remand to a different judge for resentencing should not come as a surprise to the District Court. In stating that she abided by her own conscience and her belief as to the law, the District Court judge recognized that, if the Jacksons' sentences were again vacated, the case would not return to her for re-sentencing.

**III.**

For the foregoing reasons, we will vacate the sentence imposed by the District Court and remand for resentencing. In so doing we will direct the Chief Judge of the United States District Court for the District of New Jersey to assign this case and all related matters to a different district court judge.